JOSEPH GORRASI, administrator with the will annexed, *vs.*
TERESA MANZELLA & others.

Middlesex.  November 16, 1933. — June 26, 1934.

Present: RUGG, C.J., CROSBY, PIERCE, DONAHUE, & LUMMUS, JJ.

*Marriage and Divorce,* Validity of marriage, Proof of marriage.  *Conflict
of Laws.  Evidence,* Foreign law.  *Probate Court,* Findings by judge,
Appeal.

A case in a probate court, in which the issue was whether a man and woman
had been lawfully married, was submitted to the judge of probate
upon an agreed statement containing all the material facts, except
that the parties reserved the right to introduce material evidence of
the law of Italy.  From the agreed statement it appeared that the
man and woman had gone through a religious marriage ceremony in
Italy many years before; that they thereafter cohabited together,
and were known as husband and wife, in a town in Italy for some
three years; that the man thereafter emigrated to this Common-
wealth, where he remained until his death about fifty years later;
that during that period he continuously sent money to the woman,
who remained in Italy; and that the survivor of two children born
to the couple, who for many years previous to the man's death lived
in the United States, was recognized and treated by the man as his
son.  The man's will contained no provision for the woman or said
child.  Oral and documentary evidence of the law of Italy, which
was reported on appeal, was to the effect that at the time of such
religious marriage ceremony a civil marriage ceremony was required
to make a marriage valid and that a religious ceremony was not suf-
ficient.  A decree was entered adjudging that the "religious marriage
ceremony entered into by" the man and woman "cannot be recog-
nized . . . as a legal marriage."  *Held,* that

(1) The question, whether the marriage solemnized in Italy was
valid, was to be determined by the law of Italy;

(2) An inference was not required that there had been in Italy a
civil marriage ceremony between the man and woman in addition to
the religious ceremony;

(3) Although the agreed facts, standing alone, under G. L. (Ter.
Ed.) c. 207, § 47, would have warranted or even required a finding
that the man and woman had been validly married, the finding by the
judge of probate to the contrary, as shown by the decree, could not
be said by this court to have been plainly wrong in view of the evi-
dence as to the law of Italy; and it must stand.

Where, upon appeal from a decree of a probate court, the appellant con-
tended that the judge of probate had been mistaken in his view as to

a certain point of law, but the record showed that during the trial the judge had made only fragmentary expressions respecting the point, which did not appear to have been rulings of law, and that the appellant had made no requests for rulings as to the point and had saved no exceptions to such expressions, it could not be presumed by this court, in the circumstances, that there had been error with respect to such point of law.

PETITION for instructions, filed in the Probate Court for the county of Middlesex on January 10, 1933, by the administrator with the will annexed of the estate of Frederick Manzella, late of Woburn.

The petition was heard by *Campbell,* J., upon an agreed statement of facts and other evidence, which was reported. Material facts and evidence, and a decree entered by order of the judge, are described in the opinion. Certain respondents appealed.

*H. J. Booras,* for Teresa Manzella and another.

*H. P. Johnson,* for Anthony Manzella and others.

RUGG, C.J.  This is a petition of the administrator with the will annexed of the estate of Frederick Manzella, late of Woburn in the county of Middlesex, for instructions as to the disposition to be made of the residue of the estate. The instructions which ought to be given depend upon the validity of a religious marriage ceremony between the testator and the respondent Teresa.  The case was submitted upon an agreed statement of facts which the parties agreed were "all the material facts relative to" the petition except that the right was reserved to introduce evidence as to the law of Italy so far as material.  Summarily stated, these are the agreed facts: The testator bequeathed the residue of his estate to his sister, who predeceased him leaving no issue.  Thus this legacy lapsed and is to be distributed as intestate property.  The testator entered into a religious marriage ceremony with Teresa Buttino, otherwise called in the petition Teresa Manzella (one of the respondents) in the village church at Campochiaro, Italy, on November 30, 1878.  This marriage was solemnized by an authorized priest of the Roman Catholic Church and under the rules of the church.  Following this religious marriage

ceremony, the testator and Teresa cohabited together at that town and were known as husband and wife. Two children were born to them, one in 1879, who was christened and died in infancy, and the other, Pasquale Antonio Manzella, born in 1881, who is a respondent. In 1881 the testator emigrated to this country leaving his wife and child at his home in Campochiaro, Italy, and came to Woburn, where he lived until his death. During his stay in America, he continuously sent money to Italy to said Teresa. In 1902, the respondent Pasquale Antonio Manzella came to America, at the request of the testator, who paid the passage money. Pasquale was met at Ellis Island by the testator, who brought him to Woburn and secured work for him and they lived together, sleeping in the same bed, and the son turning all his earnings over to the testator. After two years Pasquale returned to Italy, where he stayed for about six months. The passage money home was furnished by the testator, who also gave Pasquale $200 in cash. After an absence of six months, Pasquale returned to America and took up his residence at Buffalo, New York, where he has since lived and has married and has several children. The testator continued to live in Woburn, but corresponded regularly with Pasquale. In these letters he always addressed Pasquale as "son" — "my son," and he always signed the letters "your father." In 1926, the testator visited Pasquale in Buffalo, and stayed with him and his family for about nine days, and brought presents to Pasquale's wife and children. Pasquale on several occasions visited the testator in Woburn. The testator never returned to Italy, and died in Woburn in January, 1929. Pasquale had no knowledge of the death until five days after the funeral, and he immediately came to Woburn, and then went to a Woburn church and paid $10 for a mass for the testator.. The testator had a brother, who predeceased him leaving children, who are joined as respondents and who are not mentioned in the will.

The will of the testator was executed on February 25, 1926. It contains five clauses numbered consecutively. By it real estate is devised and personal property bequeathed

to different persons. In the event that his sister should predecease him, the property is given to six persons bearing the surname Buttino and described as residents of "Campocharo in the Kingdom of Italy." No mention is made in the will of the respondent Teresa (whose maiden name was Buttino) or of the respondent Pasquale.

The respondents Teresa and Pasquale rested their case upon the agreed facts. The other respondents, through two witnesses found by the trial judge to be qualified experts, introduced evidence as to the law of Italy touching the validity of marriages in 1878 in that country.

No finding of material facts was filed by the trial judge. It is ordered by the final decree that the residuary legacy to the sister of the testator has lapsed, that the "religious marriage ceremony entered into by said testator in Italy under date of November 30, 1878, cannot be recognized in this Commonwealth as a legal marriage," that the wife and son of that marriage cannot share in the residue of the estate of the testator, and that the residue be distributed among the other respondents, children of the deceased brother of the testator, who are declared to be next of kin of the testator. The appeal of the respondents Teresa and Pasquale brings the case here.

It is provided by G. L. (Ter. Ed.) c. 207, § 47: "Marriage may be proved by evidence of an admission thereof by an adverse party, by evidence of general repute or of cohabitation of the parties as married persons, or of any other fact from which it may be inferred." It was said in *Raynham* v. *Canton*, 3 Pick. 293, at page 297, decided before the enactment of this statute, that "a marriage *de facto* being proved, it should be presumed to be according to the laws. And this appears to be reasonable. As if a marriage were proved to have taken place in France, for instance, it should seem fit to require the party who denies the marriage to prove its invalidity." It was held in *Commonwealth* v. *Kenney*, 120 Mass. 387, that, in the absence of evidence as to the law of the foreign country where it took place, a "marriage solemnized by a priest, and under which the parties have cohabited as husband and wife, is *primâ facie*

a valid marriage everywhere." To the same effect is *Finer*
v. *Steuer*, 255 Mass. 611, 620–621, where the subject is
discussed at large with review of the earlier cases.

Manifestly there was sufficient in the agreed facts stand-
ing alone to prove, or even to require a finding, that the
marriage in Italy was valid and binding. That marriage,
however, was solemnized in Italy. By the law of that
country its validity must be determined. *Levy* v. *Down-
ing*, 213 Mass. 334. *Ross* v. *Ross*, 129 Mass. 243, 246–247.
*Hanson* v. *Hanson*, *ante*, 154. *Martin* v. *Otis*, 233 Mass.
491. The parties to that marriage never cohabited out-
side of Italy. They have never lived together in this Com-
monwealth. Therefore the law of this jurisdiction cannot be
invoked to establish its validity. The parties reserved the
right to introduce evidence as to the law of Italy. The
children of the deceased brother of the testator availed
themselves of that reservation. Expert witnesses were
called to testify orally concerning the law of Italy on this
subject. The official code of the Kingdom of Italy was
introduced. The evidence on this point, as shown in the
record, is categorical to the effect that a marriage solemnized
as was this one was not recognized in Italy in 1878 as legal,
that the issue of such a marriage was not recognized as heir
of his father, and that the only marriage recognized as legal
was the civil marriage before some civil public officer and
in conformity to the provisions of the code. The finding
of the trial judge as shown by the decree was that the mar-
riage was not valid. It was made after hearing oral testi-
mony. If he believed the evidence, his finding cannot be
pronounced plainly wrong. We are not justified in reversing
it under the familiar rule. *Rodrigues* v. *Rodrigues*, 286
Mass. 77, 80, and cases cited. It is not necessary to review
or summarize the oral and documentary evidence thus intro-
duced. The only question is whether it was worthy of belief.
It has been carefully examined. It supports the finding of
the trial judge. It is not without significance that the testa-
tor in his will makes no mention of the wife or son of the
Italian marriage. Whether the trial judge would have been
warranted in drawing an inference that there was a civil

marriage in addition to the religious marriage need not be decided. He did not draw that inference. It cannot be said to be so strongly required that his finding can be pronounced plainly wrong for failure to draw it.

The appellants have argued that the trial judge was mistaken in his view as to the burden of proof. While there were stray expressions on this point during the trial, they do not appear to have been rulings of law; no exception was taken to them and no requests for rulings were made. It cannot be presumed in these circumstances that there was error in this particular.

All the arguments urged against the decree have been fully considered, but they do not require further discussion.

The costs of this appeal to all parties taxed as between solicitor and client and paid out of the estate are to be in the discretion of the Probate Court.

*Decree affirmed.*